UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| SEANTYA ELDER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:25-cv-00037-SEB-KMB |
| | ) |
| DEPARTMENT OF CHILD SERVICES -- FLOYD CO., et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

Now before the Court is Defendants' Motion to Dismiss [Dkt. 13]. Plaintiff Seantya Elder, who is proceeding *pro se*, has sued Defendants Department of Child Services—Floyd County ("DCS") and DCS employee Morgan Chunlee, alleging that Defendants violated her Fourth, Fifth, and Fourteenth Amendment rights, as well as the Civil Rights Act of 1964, the Child Welfare Act of 1980, and the Interstate Compact on the Placement of Children. Plaintiff has not responded to Defendants' motion to dismiss. For the reasons detailed below, Defendants' Motion to Dismiss is GRANTED.

**Factual Background**

Mr. Elder alleges that, on June 28, 2023, a Child in Need of Services ("CHINS") order was issued to "Seantya Elder," after which DCS temporarily removed Mr. Elder's daughter, S.E., from Plaintiff's home and placed S.E. with Plaintiff's sister, Niki Elder ("Niki"). Approximately ten months later, on April 17, 2024, Niki suffered an aneurysm

1

while at Baptist Floyd Hospital in Indiana and was transported to the University of Louisville Hospital in Kentucky.

Mr. Elder and S.E. followed Niki to the hospital in Kentucky and Plaintiff called DCS employee Morgan Chunlee at approximately 11:00 a.m. to update DCS on the situation.  According to Plaintiff, Ms. Chunlee stated "that she [would] speak with her supervisor and call him back with further instructions on how to proceed."  Am. Compl. at 7.  At approximately 3:00 p.m., Ms. Chunlee drove from Indiana to Kentucky and arrived at the hospital without giving notice to Mr. Elder.

When Ms. Chunlee arrived at the hospital, she directed a nurse to have Mr. Elder leave his sister's room in the Intensive Care Unit to consult with DCS in the hallway.  Ms. Chunlee informed Mr. Elder that DCS was taking immediate custody of his daughter and when asked why Mr. Elder was not given adequate and timely notice, she responded, "I[']m sorry[,] I had so much going on that I forgot to tell you of DCS['s] intentions." *Id*. Tragically, while Mr. Elder was speaking with Ms. Chunlee, his sister died, meaning that neither Mr. Elder nor S.E. was able to be with Niki at the time of her death.  Mr. Elder alleges that, at approximately 8:00 p.m. that evening, DCS placed S.E. "into housing" and restricted Mr. Elder from communicating with or visiting his daughter for several weeks.

Mr. Elder alleges that DCS's actions caused him extreme psychological and emotional damage.  Based on these facts, Mr. Elder alleges violations of his Fourth, Fifth, and Fourteenth Amendment rights, as well as the Civil Rights Act of 1964, the Child Welfare Act of 1980, and the Interstate Compact on the Placement of Children.  Mr.

Elder seeks $200,000 in compensatory damages for medical expenses, pain and suffering, and emotional distress, as well as $300,000 in punitive damages. *Id.* at 5.

## Legal Analysis

### I.   Rule 12(b)(6) Standard

Defendants have filed their motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). In this procedural context, the Court must accept as true all well-pled factual allegations in the complaint and draw all ensuing inferences in favor of the non-movant. *Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009). Nevertheless, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," and its "[f]actual allegations must . . . raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (citations omitted). The complaint must therefore include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R. Civ. P. 8(a)(2). Stated otherwise, a facially plausible complaint is one which permits "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As noted above, Plaintiff has not responded to Defendants' motion to dismiss. Rule 12(b)(6) "prevents courts from granting unopposed motions solely because there is no response." *Marcure v. Lynn*, 992 F.3d 625, 633 (7th Cir. 2021). Thus, regardless of the fact that Plaintiff has not addressed Defendants' arguments, "the court must evaluate the allegations in the … complaint to determine whether the pleadings are sufficient to

3

defeat a Rule 12(b)(6) motion." *LeSure v. Walmart Inc.*, No. 21-cv-472-pp, 2022 WL 3647908, at *8 (E.D. Wis. Aug. 24, 2022).

## II.     Section 1983 Claims

We turn first to Mr. Elder's Fourth, Fifth, and Fourteenth Amendment claims. Such constitutional claims must be brought under 42 U.S.C. § 1983, which statute provides that "[e]very person who, under the color of … [law] subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law."  Mr. Elder's § 1983 claims against DCS fail, however, because it is well-established that DCS and its county offices are considered an arm of the state and thus are not "person[s]" subject to suit for money damages under § 1983.  *See Boston v. Ind. Dep't of Child Servs.*, No. 1:19-cv-03279-JRS-MPB, 2021 WL 795452, at *3 (S.D. Ind. Mar. 2, 2021) ("DCS is not a "person" subject to suit under § 1983.") (citing *Lapides v. Bd. of Regents of the U. Sys. of Ga.*, 535 U.S. 613, 617 (2002)); *Holmes v. Marion Cnty. Office of Family & Children*, 349 F.3d 914, 919 (7th Cir. 2003) (holding that county level DCS offices are part of the "state").

With regard to the constitutional claims against Ms. Chumley, we recap Mr. Elder's allegations: in June 2023, DCS temporarily removed his daughter from his custody and placed her with his sister.  In April 2024, Mr. Elder's sister suffered an aneurysm and was transported from a hospital in Indiana to a Kentucky hospital.  Mr. Elder took his daughter from Indiana to Kentucky so that they could be with his sister. Mr. Elder notified DCS, specifically Ms. Chumley, of the situation, who told him that she

4

would speak with her supervisor and call him back with instructions how to proceed. A few hours later, without ever placing that phone call, Ms. Chumley arrived at the hospital and informed Mr. Elder that DCS was intending to immediately remove S.E. from his care. Mr. Elder further alleges that DCS placed S.E. "in housing" and prohibited Mr. Elder from visiting or contacting his daughter for several weeks thereafter. Mr. Elder alleges that Ms. Chumley's actions violated his Fourth, Fifth, and Fourteenth Amendment rights.

"The Fourth Amendment, incorporated by the Fourteenth Amendment, provides that '[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated….'" *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1009 (7th Cir. 2000) (quoting U.S. CONST., amend. IV). Here, Mr. Elder does not allege any facts that plausibly state a violation of his Fourth Amendment rights. He does not claim that he was searched or seized by Ms. Chumley when she removed S.E. from the Kentucky hospital in 2024, and to the extent that Mr. Elder is alleging that his Fourth Amendment rights were violated in connection with DCS's initial removal of S.E. from his custody in 2023, he has not alleged that Ms. Chumley had any involvement in that decision. While the removal of a child may constitute a seizure giving rise to a violation *of the child's* Fourth Amendment rights, Mr. Elder has brought this lawsuit solely in his name, not on behalf of his daughter. Therefore, Mr. Elder has failed to state a plausible Fourth Amendment claim.

Mr. Elder has also failed to state a claim against Ms. Chumley under the due process clause of the Fifth Amendment, which applies only to federal officials. Ms.

5

Chumley, a DCS employee, is not a federal official. Accordingly, a Fifth Amendment due process claim cannot be pursued against her and such claim shall be dismissed.

Mr. Elder's Fourteenth Amendment due process claim also cannot survive dismissal as his factual allegations are simply too sparse to state a plausible claim for relief against Ms. Chumley. To adequately allege either a substantive or procedural due process claim, a plaintiff must show that he has a constitutionally protected property or liberty interest. *See Omosegbon v. Wells*, 335 F.3d 668, 674 (7th Cir. 2003) ("The standard elements of a due process claim include whether the plaintiff suffered a deprivation of a cognizable property or liberty interest, and whether any such deprivation occurred without due process."). It is well-established that there is a "fundamental liberty interest of natural parents in the care, custody, and management of their child …." *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). However, "the constitutional right to familial integrity is not absolute" and must be balanced with "the state's interest in protecting children from abuse, especially in cases where children are removed from their homes." *Brokaw*, 235 F.3d at 1019.

Here, taking Mr. Elder's allegations as true as we are required to do at the motion to dismiss stage, S.E. had previously been removed from his custody pursuant to a CHINS order and was in his sister's temporary custody at the time the events giving rise to this lawsuit occurred. Accordingly, the actions taken by Ms. Chumley (removing S.E. from Mr. Elder's care at the hospital for temporary placement "in housing") affected only those parental rights of Mr. Elder's that had already been circumscribed by the State's action. To the extent that Mr. Elder is alleging his parental-liberty interest was violated

when DCS subsequently restricted him from visiting and communicating with his daughter for several weeks during a family crisis, he does not allege that Ms. Chumley was personally involved in those decisions. *See Estate of Perry v. Wenzel*, 872 F.3d 439, 459 (7th Cir. 2017) ("Individual liability pursuant to § 1983 requires personal involvement in the alleged constitutional deprivation.") (citation modified). For these reasons, Mr. Elder's Fourteenth Amendment claim against Ms. Chumley do not survive dismissal.

### III. Civil Rights Act of 1964

Mr. Elder also references the Civil Rights Act of 1964 in his amended complaint, which statute was enacted to prevent discrimination in public accommodation, employment, voting, and federal assistance programs on the basis of race, color, sex, religion, and national origin. *See* 42 U.S.C. 2000e *et. al.* Because Mr. Elder's amended complaint includes no allegations of discrimination based on any protected characteristic, he has failed to state a plausible claim for relief under the Civil Rights Act of 1964.

### IV. Adoption Assistance and Child Welfare Act of 1980

Mr. Elder's amended complaint contains a single reference to the "Child Welfare Act of 1980," but it is not clear what the factual basis is for such a claim. To the extent that Mr. Elder intends to allege a violation of the statute's requirement that a state must have a plan providing that "reasonable efforts" will be made to prevent a child from being removed from her home, and once removed, to reunify the child with her family, the Supreme Court has held that no private right of action exists under that provision. *Suter v. Artist M.*, 503 U.S. 347, 363–64 (1992). To the extent that Mr. Elder's claim is based

on some other provision of the statute, the factual detail in his amended complaint is "so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8 [of the Federal Rules of Civil Procedure]," and is thus subject to dismissal. *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

  **V.**  **Interstate Compact on the Placement of Children**

  Mr. Elder also indicates in his amended complaint that he seeks to bring a claim under the Interstate Compact on the Placement of Children ("ICPC"), which is codified at Indiana Code § 31-28-4 *et al.* "The ICPC facilitates the interstate placement of children and resolves jurisdictional issues." *In re Adoption of J.L.J.*, 4 N.E.3d 1189, 1199 (Ind. Ct. App. 2014) (citing Ind. Code § 31-28-4-1), *trans. denied*. "Prior to placing a child in a home or childcare institution located in another state, the person or agency in the 'sending' state must submit written notice to the appropriate authorities in the 'receiving state' to provide information about the child and the proposed placement, as well as the reasons necessitating the placement." *Id.* (citing Ind. Code § 31-28-4-1 art. III(a)–(c)). "In turn, the receiving state must notify the sending state 'that the proposed placement does not appear to be contrary to the interests of the child.'" *Id.* (citing Ind. Code § 31-28-4-1 art. III(d)). Indiana courts have held that "the plain language of the statute makes clear that the ICPC applies only to the placement of a child in foster care or as preliminary to a possible adoption." *In re D.B.*, 43 N.E.3d 599, 604 (Ind. Ct. App. 2015), *trans. denied*.

8

The facts alleged in Mr. Elder's amended complaint do not suffice to state a claim under the ICPC. The only interstate transport alleged is Mr. Elder having transported his daughter from Indiana to the hospital in Kentucky, and Indiana law is clear that "the ICPC does not apply to natural parents." *Matter of L.H.*, 142 N.E.3d 977, 984 (Ind. Ct. App. 2020) (citations omitted). To the extent that Mr. Elder seeks to allege a violation of the ICPC based on DCS's removal of S.E. from his care at the hospital, that claim lacks sufficient detail in that he alleges only that DCS placed S.E. "into housing" after removing her. The vagueness of this allegation makes it insufficient in terms of stating a plausible claim for relief under the ICPC.

### VI. Conclusion

For the reasons detailed above, Defendants' Motion to Dismiss is <u>GRANTED</u> without prejudice. We will provide Plaintiff an opportunity to file an amended complaint that resolves the deficiencies cited in this entry, if possible. **If Plaintiff does not file a new complaint within forty (40) days of the date of this order, we will dismiss his lawsuit with prejudice, meaning, it will be over for good.**

IT IS SO ORDERED.

Date: 10/22/2025

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

SEANTYA ELDER
4329 S. 3rd St.
Louisville, KY 40219

Allison Mauk
Office of Indiana Attorney General
allison.mauk@atg.in.gov

Steven Reidell
Office of Indiana Attorney General
steven.reidell@atg.in.gov

10